UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| GENE CALIWAG,<br><br>                Plaintiff,<br><br>     vs.<br><br>C&S WHOLESALE GROCERS, INC.,<br><br>                Defendant. | CIV. NO. 21-00367 LEK-RT |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant C&S Wholesale Grocers, Inc.'s ("Defendant") Motion for Summary Judgment ("Motion"), filed on October 4, 2023. [Dkt. no. 43.] Plaintiff Gene Caliwag ("Plaintiff") filed his memorandum in opposition on November 5, 2023. [Dkt. no. 48.] Defendant filed a reply on November 13, 2023. [Dkt. no. 107.] This matter came for hearing on November 27, 2023. Defendant's Motion is hereby granted for the reasons set forth below, and summary judgment is hereby granted in favor of Defendant as to all of Plaintiff's claims in this case.

## BACKGROUND

Plaintiff was hired as the general manager of Hawaii Logistics, LLC ("Hawaii Logistics") in 2018. [Def.'s Concise Statement of Facts in Supp. of Motion for Summary Judgment ("Def.'s CSOF"), filed 10/4/23 (dkt. no. 44), at ¶ 5; Pltf.'s

Concise Statement of Facts in Opp. to Def.'s Motion for Summary
Judgment ("Pltf.'s CSOF"), filed 11/5/23 (dkt. no. 49), at
Pltf.'s Response to Def.'s Concise Statement of Facts ¶ 1-6
("Responsive ¶ 1-6") (stating Def.'s ¶¶ 1-6 are undisputed).]
Defendant has two subsidiaries in Hawai`i, Hawaii Logistics, a
unionized grocery distribution warehouse, and Hawaiian
Housewares, doing business as Hansen Distribution Group
("Hansen"), a non-union grocery distribution warehouse. [Def.'s
CSOF at ¶ 1; Pltf.'s CSOF at Responsive ¶ 1-6.] Plaintiff was
terminated around May 7, 2020. At that time, Plaintiff was
sixty-one years old. [Pltf.'s CSOF, Decl. of Gene Caliwag
("Caliwag Decl.") at ¶¶ 6-7.] Plaintiff is of Filipino ancestry.
[Id. at ¶ 4.]

        According to Beau Oshiro ("Oshiro"), Defendant's
Hawaii Vice President, Division Manager from October 2008 to
July 2020, Defendant's Hawaii Division was underperforming in
the 2020 fiscal year, which was exacerbated by the pandemic.
[Def.'s CSOF, Decl. of Beau Oshiro ("Oshiro Decl.") at ¶¶ 1, 4.]
Oshiro, along with his manager and Defendant's Vice President of
Human Resources, determined that replacing two warehouse general
managers with a single warehouse general manager to oversee both
Hawaii Logistics and Hansen would cut costs. They retained
Hansen's warehouse general manager, Jose Quiocho ("Quiocho"),
over Plaintiff due to Quiocho's over twenty-year tenure with

2

Defendant, and his labor union experience. [Id. at ¶¶ 5-6.] According to Oshiro, Quiocho led labor relations at Hawaii Logistics due to Plaintiff's lack of experience in that area. [Id. at 6.] Oshiro states that neither Plaintiff's age nor ancestry was a factor in choosing to retain Quiocho as the single general manager. [Id. at ¶ 10.] Oshiro states an accounting manager was laid off and several other employees were placed on furlough at the same time as Plaintiff. [Oshiro Decl. at ¶ 8.]

Plaintiff states that he was informed by John Grimaldi, Defendant's Vice President of Distribution Operations, West Coast, that he was being let go "'due to the pandemic.'" [Caliwag Decl. at ¶ 16.] According to Plaintiff, at his termination meeting, Grimaldi stated the Hawai`i division of Defendant's company was down forty percent in sales, and Defendant needed to reduce costs by having Quiocho fill the manager positions of both of Defendant's Hawai`i subsidiaries. [Id.] Plaintiff knew that some of Defendant's other employees also were laid off around the same time as him. [Def.'s CSOF, Decl. of Richard M. Rand ("Rand Decl."), Exh. B (transcript excerpts of 7/21/23 Zoom Deposition of Gene Caliwag ("Caliwag Depo.")) at 108.]

The parties do not dispute that no mention was made of Plaintiff's age or national origin during his interview, and

Plaintiff could not identify any derogatory comments made to him during his employment about his age or national origin. [Def.'s CSOF at ¶¶ 8, 10; Pltf.'s CSOF at Responsive ¶ 8-13.] Plaintiff also testified at his deposition that he had no facts to show that his age or national origin were the reasons Quiocho was selected. [Def.'s CSOF at ¶ 19; Pltf.'s CSOF at Responsive ¶ 18-22; Rand Decl., Exh. B (Caliwag Depo.) at 106-07.]

Quiocho is of Native Pacific Islander/Hawaiian descent, and as of August 2020, was forty years old. [Caliwag Decl., Exh. B (excerpts of letter, dated 8/27/20 to the Equal Employment Opportunity Commission ("EEOC") - Honolulu Local Office from Defendant, responding to Plaintiff's complaint ("Defendant's Response to EEOC")) at 4.] Quiocho began his career at Hawaii Logistics before working at Hansen. Quiocho began working for Defendant in 1999 as a warehouse employee. [Oshiro Decl. at ¶ 9.] In Quiocho's 2019 Year End Review, Quiocho was rated "Above Expectations." [Oshiro Decl., Exh. A (Quiocho, Jose J R Year End Review (FY19)) at 1.] Quiocho had been a union steward and had participated in multiple union negotiations as a leadership member. [Oshiro Decl. at ¶ 6.]

Prior to his termination, Plaintiff did not have any disciplinary problems nor documented performance problems. [Caliwag Decl. at ¶ 9.] Caliwag's Year End Review for 2019 overall rating was "Meets Expectations." [Rand Decl., Exh. B-1

(Caliwag, Gene Year End Review (FY19)) at 1.] Plaintiff's division, but not Quiocho's, exceeded the assigned Gross Error Rate, met their Warehouse Controllable Credits, exceeded their Detention and Demurrage Charges, and had the highest Customer Satisfaction Scores in the nation at the time of Plaintiff's termination. [Caliwag Decl. at ¶¶ 25-26.]

Plaintiff states his position required a Bachelor's degree. See id., Exh. A (position description for Hawaii Logistics Warehouse General Mgr A ("General Manager Position Description")); see also Plaintiff's Submission of Fully Legible Version of Exhibit "A," filed 11/14/23 (dkt. no. 52) ("Refiled Exh. A"), at PageID.258. According to Plaintiff, he has a bachelor's degree and Quiocho did not. [Caliwag Decl. at ¶ 12; Rand Decl., Exh. B (Caliwag Depo.) at 60.]

According to Plaintiff, he has extensive experience working with unions. [Caliwag Decl. at ¶ 13.] As the supply chain vice president at Hawaii Pacific Health for three years, he "had a couple of unions operating within [his] area of responsibility," and he worked closely with HR Employee Relations when it conducted contracts negotiations with the union. [Id.] As the Vice President of Operations at Better Brands for two years, Plaintiff directly negotiated with the Teamster union and managed the contract. As the general manager of Hawaii Logistics, he had the responsibility to manage the

5

contract terms and grievances with the International Longshore and Warehouse Union. Plaintiff signed off on all grievance-related documentation, and in his final year the number of grievances filed declined steeply. [Id. at ¶¶ 14-15.]

According to Plaintiff, both Plaintiff and Quiocho had some responsibility over sales. [Caliwag Decl. at ¶¶ 22.] However, Plaintiff admitted in his deposition that he did not have responsibility for sales. [Rand Decl., Exh. B (Caliwag Depo.) at 15-16.] Plaintiff states overall sales reflected one's individual performance, and affected the incentive bonus received by both Quiocho and himself as members of senior leadership. [Caliwag Decl. at ¶ 24; id., Exh. C (Short Term Incentive Plan for SR Leadership ("Short Term Incentive Plan")).] During the last weekly meeting discussing financials and goals prior to Plaintiff's termination, Oshiro informed Plaintiff that his sales were $9.9 million ahead of Defendant's sales goals. [Caliwag Decl. at ¶ 20.] In contrast, Oshiro indicated Quiocho's division was behind on their sales goals by up to forty percent. [Id.]

Plaintiff alleges the following claims: discrimination based on national origin resulting in wrongful termination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), Title 42 United States Code Section 2000e-2(a)(1) ("Count I"); and discrimination in employment resulting in

wrongful termination on the basis of ancestry and age in violation of Haw. Rev. Stat. § 378-2(a)(1)(A) ("Count II"). [Complaint-Civil Rights; Employment Discrimination (42 U.S.C. §§ 2000e, *et seq.* and HRS Chapter 378) ("Complaint"), filed 8/27/21 (dkt. no. 1), at ¶¶ 35-49.] Defendant asks this Court to grant summary judgment in its favor as to all of Plaintiff's claims. [Motion, Mem. in Supp. at 22.]

## DISCUSSION

In Count I, Plaintiff alleges discriminatory termination based on national origin in violation of Title VII. Count II, brought pursuant to Haw. Rev. Stat. § 378-2, includes the same allegations and an allegation of age discrimination. Title VII prohibits employers from, *inter alia*, "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish Defendant violated Title VII, Plaintiff "must first establish a prima facie case of employment discrimination." See Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010) (citation omitted). Under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),

> [i]f [Plaintiff] establish[es] a prima facie
> case, "[t]he burden of production, but not
> persuasion, then shifts to the employer to
> articulate some legitimate, nondiscriminatory
> reason for the challenged action." Chuang v.
> Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115,
> 1123-24 (9th Cir. 2000). If [Defendant] meets
> this burden, [Plaintiff] must then raise a
> triable issue of material fact as to whether
> [Defendant's] proffered reasons for [his]
> termination[] are mere pretext for unlawful
> discrimination. Noyes [v. Kelly Servs.], 488 F.3d
> [1163,] 1168 [(9th Cir. 2007)]; see also Coleman
> v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir.
> 2000) (plaintiffs must "introduce evidence
> sufficient to raise a genuine issue of material
> fact" as to pretext).

Hawn, 615 F.3d at 1155-56 (some alterations in Hawn). A

plaintiff is not required to rely on the presumption that the

McDonnell Douglas burden-shifting framework provides to

plaintiffs if he can present direct evidence of discrimination.

Cf. Nohara v. DeJoy, CIV. NO. 20-00553 JMS-RT, 2023 WL 3791637,

at *5 n.8 (D. Hawai`i June 2, 2023) (discussing the presumption

in the context of retaliation cases) (citing Lyons v. England,

307 F.3d 1092, 1112 (9th Cir. 2002)). In the instant case,

Plaintiff does not identify any direct evidence, and therefore

the McDonnell Douglas framework applies.

        This Court has stated that, under the McDonnel Douglas

framework:

> The degree of proof required to establish a prima
> facie case for summary judgment is minimal. See
> Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094
> (9th Cir. 2005). A prima facie case of disparate
> treatment requires a plaintiff to establish that:

> (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position in issue; (3) the plaintiff suffered an adverse employment decision; and (4) one or more employees outside the protected class with comparable qualifications and work records did not suffer similar adverse employment decisions. See, e.g., White v. Pac. Media Grp., Inc., 322 F. Supp. 2d 1101, 1110 (D. Haw. 2004).
>
> A plaintiff must demonstrate that his or her situation is similar in all material respects to that of employees who received more favorable treatment. See Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). However, "a plaintiff is not obligated to show disparate treatment of an **identically** situated employee." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) (cited approvingly in Selig). Instead, "individuals are similarly situated when they have similar jobs and display similar conduct." Hawn v. Exec. Jet Mgmt. Inc., 615 F.3d 1151, 1160 (9th Cir. 2010) (citing Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003) (finding employee not similarly situated if he "did not engage in problematic conduct of comparable seriousness" to plaintiff's conduct)).

Wadas v. Delta Airlines. Inc., Civ. No. 18-00312 LEK-KJM, 2020 WL 7700583, *11-12 (D. Hawai`i Dec. 28, 2020) (emphasis in original) (some citations omitted).

In interpreting § 378-2,[1] the Hawai`i Supreme Court has looked "to interpretations of analogous federal laws by the

---

[1] Section 378-2 provides, in pertinent part:

> **Error! Main Document Only.**(a) It shall be an unlawful discriminatory practice:
>
>> (1)  Because of race, sex including gender identity or expression, sexual orientation,
>> (. . . continued)

federal courts for guidance," Schefke v. Reliable Collection
Agency, Ltd., 96 Hawai'i 408, 425, 32 P.3d 52, 69 (2001)
(citations omitted), and has, in some instances, adopted the
same test for a § 378-2 claim as the test used by federal courts
for the similar Title VII claim, id. at 426, 32 P.3d at 70
(adopting test for retaliation claim); see also Jackson v.
Foodland Super Market, Ltd., 958 F. Supp. 2d 1133, 1139 (D.
Hawai'i 2013) ("A claim of discrimination under HRS Chapter 378
is governed by the same test used by the federal courts in Title
VII cases." (citing Schefke v. Reliable Collection Agency, Ltd.,
96 Hawai'i 408, 32 P.3d 52, 69-70 (2001))).

---

age, religion, color, ancestry, disability,
marital status, arrest and court record,
reproductive health decision, or domestic or
sexual violence victim status if the
domestic or sexual violence victim provides
notice to the victim's employer of such
status or the employer has actual knowledge
of such status:

> (A)  For any employer to refuse to hire
> or employ or to bar or discharge from
> employment, or otherwise to
> discriminate against any individual in
> compensation or in the terms,
> conditions, or privileges of
> employment;

> . . . .

(3)  For any person, whether an employer,
employee, or not, to aid, abet, incite,
compel, or coerce the doing of any of the
discriminatory practices forbidden by this
part, or to attempt to do so[.]

I.   **Prima Facie Case**

Under the McDonnell Douglas burden-shifting framework, Plaintiff has made out a prima facie case of national origin or ancestry discrimination pursuant to Title VII and Haw. Rev. Stat. § 378-2, and a prima facie case of age discrimination pursuant to § 378-2.

It is undisputed that Plaintiff meets the first three criteria for establishing a prima facie case: Plaintiff is a member of a protected class, Plaintiff was qualified for the Hawaii Logistics warehouse general manager position, and Plaintiff suffered an adverse employment decision – Plaintiff was terminated in May of 2022. The dispute lies over the fourth criteria: whether Plaintiff failed to adduce evidence that his termination occurred "under circumstances which give rise to an inference of unlawful discrimination." See Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981).

Plaintiff has met the minimal burden of establishing a prima facie case. See Coghlan, 413 F.3d at 1094. Plaintiff has demonstrated that Quiocho was similarly situated. Employees are similarly situated if "they have similar jobs and display similar conduct." Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003). Viewing the record in the light most

favorable to Plaintiff,[2] he has met his minimal burden of showing
that a similarly situated employee outside of his protected
class received more favorable treatment. Plaintiff is Filipino,
while Quiocho is not. [Caliwag Decl. at ¶¶ 4, 18; id., Exh. B
(Def.'s Response to EEOC) at 4.] Plaintiff is also significantly
older than Quiocho. [Caliwag Decl. at ¶¶ 6-7 (stating Plaintiff
was sixty-one years old when he was terminated); id., Exh. B
(Def.'s Response to EEOC) at 4 (stating Quiocho was forty years
old as of August 2020).] Both Quiocho and Plaintiff were
warehouse general managers of different subsidiaries of
Defendant. [Def.'s CSOF at ¶¶ 1, 5, 9; Pltf.'s CSOF at
Responsive ¶¶ 1-6, 8-13.] Defendant's merging of the two roles
suggests the roles are sufficiently similar. Quiocho was
retained for the merged warehouse general manager position,
while Plaintiff was terminated. [Oshiro Decl. at ¶¶ 5-6.]
Plaintiff testified during his deposition that he thought it
might make sense to merge the two warehouse manager positions a
few months after he began work. [Rand Decl., Exh. B (Caliwag
Depo.) at 105.] This is sufficient to demonstrate a prima facie
case of discrimination based on ancestry and age pursuant to
Haw. Rev. Stat. § 378-2, and a prima facie case of national

---

[2] In considering a motion for summary judgment, this Court
must view the record in the light most favorable to the
nonmoving party. See Harris v. Cnty. of Orange, 17 F.4th 849,
855 (9th Cir. 2021).

origin discrimination pursuant to Title VII. See Hawn, 615 F.3d at 1158 (noting that "a plaintiff's burden is much less at the prima facie stage than at the pretext stage" (citations omitted)); see also Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 659 (9th Cir. 2002) (emphasizing the low threshold for a prima facie case).

## II.  **Legitimate, Non-Discriminatory Reason**

Defendant has shown that it honestly believed it had a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant presents evidence that the general manager positions for Hawaii Logistics and Hansen were merged due to pre-existing financial concerns that were exacerbated by the pandemic. [Oshiro Decl. at ¶¶ 4-5.] Defendant presents evidence that Quiocho was chosen for the position because Quiocho had a significantly longer tenure with Defendant, and has more union negotiation experience with Defendant. [Id. at ¶ 6.] Even viewing the record in the light most favorable to Plaintiff, Defendant has met its burden of offering a legitimate, nondiscriminatory reason for selecting Quiocho over Plaintiff for the merged warehouse general manager position. The burden therefore shifts back to Plaintiff to raise a triable issue of material fact regarding pretext. See Noyes, 488 F.3d at 1168.

### III. **Pretext**

> [A] plaintiff can prove pretext in multiple ways, either: (1) "directly, by showing that unlawful discrimination more likely [than not] motivated the employer;" (2) "indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable;" or via "a combination of the[se] two kinds of evidence." Chuang, 225 F.3d 1127 (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220–22 (9th Cir. 1998)).
>
> Under any approach, generally, "very little[] evidence is necessary to raise a genuine issue of fact regarding an employer's motive." McGinest [v. GTE Serv. Corp.], 360 F.3d [1103,] 1124 [(9th Cir. 2004)] (alteration in original) (internal quotation marks omitted) (quoting Schnidrig [v. Columbia Mach., Inc.], 80 F.3d [1406,] 1409 [(9th Cir. 1996)]). For instance, the Supreme Court has instructed that "a plaintiff's prima facie case, combined with . . . evidence . . . that the employer's asserted justification is **false**, may" be enough. Reeves [v. Sanderson Plumbing Prods., Inc.], 530 U.S. [133,] 148, 120 S. Ct. 2097 [(2000)] (emphasis added). However, the plaintiff at all times retains "[t]he ultimate burden of persuading the trier of fact," St. Mary's [Honor Ctr. v. Hicks], 509 U.S. [502,] 507, 113 S. Ct. 2742 [(1993)] (internal quotations omitted) (quoting Burdine, 450 U.S. at 253, 101 S. Ct. 1089), that an employer's contested action was "due in part or [in] whole to discriminatory intent," McGinest, 360 F.3d at 1123. Accordingly, where "abundant and uncontroverted independent evidence" suggests that "no discrimination . . . occurred," plaintiff's "creat[ion of] only a weak issue of fact as to whether the employer's reason was untrue" will not suffice. Reeves, 530 U.S. at 148, 120 S. Ct. 2097.

Opara v. Yellen, 57 F.4th 709, 723–24 (9th Cir. 2023) (emphasis

and some alterations in Opara) (footnote omitted).

14

Plaintiff offers no direct evidence that Defendant's stated reasons for selecting Quiocho were pretext for unlawful discrimination. The Court therefore considers Plaintiff's circumstantial evidence of pretext. Circumstantial evidence "is evidence that requires an additional inferential step to demonstrate discrimination." Coghlan, 413 F.3d at 1095. Circumstantial evidence "must be specific and substantial to defeat the employer's motion for summary judgment." Id. (citations and internal quotation marks omitted).

Plaintiff attempts to discredit Defendant's justification through two primary arguments: (1) Quiocho did not meet the requirements of the job description because Quiocho lacked a college degree, while Plaintiff possessed a college degree; and (2) Plaintiff's department's sales were up significantly from the goals, whereas Quiocho's department's were significantly down, and Plaintiff's department was significantly larger than Quiocho's. [Mem. in Opp. at 9-14.]

"Although [Plaintiff] has provided sufficient evidence to support an inference of discrimination, and thus has met [his] burden on [his] prima facie case, that evidence is not sufficient to raise a genuine issue of material fact regarding the truth of [Defendant's] proffered nondiscriminatory reasons . . . ." See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1094 (9th Cir. 2001) (citation omitted).

15

Regarding Plaintiff's sales argument, Plaintiff appears to argue that Defendant's apparent disregard of Plaintiff's comparatively better sales than Quiocho's constitutes pretext. [Mem. in Opp. at 14.] Preliminarily, the parties dispute whether Plaintiff and Quiocho had responsibility for sales. Defendant cites to Plaintiff's deposition testimony where Plaintiff admitted he did not have responsibility for sales. See Rand Decl., Exh. B (Caliwag Depo.) at 15-16; Reply, Exh. C (excerpts from Caliwag Depo.) at 70-71, 126.] Defendant also notes that the Year End Review and the position description do not indicate Plaintiff or Quiocho was responsible for sales. [Reply at 7 (citing Oshiro Decl., Exh. A (Quiocho, Jose J R Year End Review (FY19)) at 1-6; Rand Decl., Exh. B-1 (Caliwag, Gene Year End Review (FY19)) at 1-9; Caliwag Decl., Exh. A (General Manager Position Description).] Plaintiff points to the following evidence he was responsible for sales: Plaintiff's testimony of weekly meetings with Oshiro discussing sales, the Short Term Incentive Plan, and Defendant's submission to the EEOC. See Mem. in Opp. at 11-13 (citing Caliwag Decl. at ¶ 19; id., Exh. C (Short Term Incentive Plan); id., Exh. B (Def.'s Response to EEOC) at 4).

The primary document Plaintiff offers in support of his argument is the Short Term Incentive Plan. Defendant contends that neither Quiocho nor Plaintiff had responsibility

16

for sales, which Plaintiff argues is a partially false representation. [Def.'s CSOF at ¶ 7, Pltf.'s CSOF at Responsive ¶ 7 (stating Def.'s ¶ 7 is partially disputed); Mem. in Opp. at 12.] Plaintiff argues that overall sales reflected one's individual performance, which in turn impacted the bonuses Quiocho and Plaintiff received as part of Defendant's senior leadership. [Mem. in Opp. at 13 (citing Caliwag Decl., Exh. C).] Defendant contends nothing in the Short Term Incentive Plan states warehouse managers' individual performance were evaluated on the basis of the sales of the warehouse they supervised. [Reply at 4–5.] The Short Term Incentive Plan does not link warehouse general managers' bonuses to their warehouse sales, but rather states bonus funding is tied to Defendant's earnings as a whole, not those of individual warehouses. [Caliwag Decl., Exh. C.] The Short Term Incentive Plan does not demonstrate that warehouse general managers are responsible for the sales of their warehouses.

As to Defendant's submission to the EEOC, this does not demonstrate that Quiocho or Plaintiff were responsible for sales. Plaintiff cites the line "those sales numbers were already lower than expected for the previous fiscal year, so this was a matter of deep concern" as indicating that Plaintiff was responsible for sales. [Mem. in Opp. at 13; Caliwag Decl., Exh. B (Defendant's Response to EEOC) at 4.] Not so. This

statement describes Defendant's Hawai`i facilities' financial
outlook at the time Plaintiff was terminated. Simply because an
employer is terminated due to the financial outlook of a company
does not mean an employee is responsible for sales. Defendant
presented evidence that an Accounting Manager was also
terminated at this time, and other employees were furloughed.
[Oshiro Decl. at ¶ 8.] That does not mean those employees were
responsible for sales. Defendant's submission to the EEOC fails
to raise a genuine issue of fact for trial as to whether
Plaintiff or Quiocho were responsible for sales.

     The last evidence Plaintiff cites to demonstrate that
he and Quiocho were responsible for sales is Plaintiff's
declaration, in which he describes meetings he and Quiocho
participated in where sales were discussed. Plaintiff states:

> 19.  The Hawaii division of Defendant had
> weekly meetings in which our financials and
> goals, including sales related, were discussed.
> Beau Oshiro, the head of the Hawaii division
> would conduct the meetings and discuss Jose and
> my "numbers," including sales numbers.
>
> 20.  At the time I was terminated it was
> indicated by Beau Oshiro during the most recent
> meetings before my termination that my sales were
> $9.9 million ahead of my sales goal set by
> Defendant. Beau also indicated that Jose's
> division was significantly behind in his sales
> goals, according to Beau, Jose was behind by up
> to 40%.

[Caliwag Decl. at pg. 5.] This could arguably raise an issue of
fact as to whether Plaintiff and Quiocho were at least partially

18

responsible for sales. However, when viewed in the light of the
summary judgment record as a whole – Plaintiff's repeated
testimony during his deposition that he was not responsible for
sales, the lack of a mention of sales in Plaintiff's job
description, the lack of a mention of sales in either Quiocho's
or Plaintiff's Year End Review, and the lack of a mention of
warehouse sales in the Short Term Incentive Plan – no rational
factfinder would find that Plaintiff or Quiocho responsible for
sales. See Reeves, 530 U.S. at 148, see also Keliipuleole v.
Molokai Ohana Health Care Inc., CIVIL NO. 21-00170 JAO-KJM, 2022
WL 1308360, at *13 (D. Hawai`i May 2, 2022); Caliwag Decl. re,
Exh. C (Short Term Incentive Plan); id., Exh. A (General Manager
Position Description); Refiled Exh. A; Rand Decl., Exh. B
(Caliwag Depo.) at 15-16; id., Exh. B-1 (Caliwag FY19 Review).

        While the parties contest whether Plaintiff's job was
responsible for sales, even if Plaintiff's position had
responsibility for sales, this, without more, does not
demonstrate pretext. A decisionmaker emphasizing certain parts
of documents while ignoring other parts of documents favorable
to the plaintiff can constitute circumstantial evidence of
discrimination. See Lindsey v. SLT Los Angeles, LLC, 447 F.3d
1138, 1152 (9th Cir. 2006). However, here, there is no evidence
Defendant ignored evidence favorable to Plaintiff or did

anything aside from consider all of the facts in determining who
would be best qualified for the job.

Even if Plaintiff and Quiocho had some responsibility
for sales, that would not help Plaintiff demonstrate that he was
terminated on account of his age or national origin. The record
indicates that sales were up for Hawaii Logistics and down for
Hansen due to the pandemic – Hansen was a food service
organization, whereas Hawaii Logistics served retail grocery
customers. [Rand Decl., Exh. B (Caliwag Depo.) at 30.] During
the early pandemic, according to Plaintiff, there was more
demand for groceries and less for restaurants. [Id. at 63-64.]
There is no indication in the record that Defendant attributed
the increase in sales for Hawaii Logistics to Plaintiff and
decrease in sales for Hansen to Quiocho, and in fact, the record
indicates that Defendant is more likely to have attributed sales
increases or decreases to the pandemic. Plaintiff does not
create a triable issue as to whether Defendant's reason for
retaining Quiocho over Plaintiff was pretextual, based on the
fact that Plaintiff's department's sales were comparatively
higher than Quiocho's department's sales.

As to the position requiring a college degree,
Plaintiff appears to offer the alleged job description for
Plaintiff's former position, not the merged general manager
position. See Caliwag Decl., Exh. A (General Manager Position

20

Description). Even assuming a college degree was a requirement within the job description for the merged general manager position, this is insufficient to demonstrate pretext.

An employer's disregard for its company policies or failure to follow normal practices can constitute evidence of pretext. Earl v. Nielsen Media Rsch., Inc., 658 F.3d 1108, 1117 (9th Cir. 2011) ("A plaintiff may also raise a triable issue of pretext through evidence that an employer's deviation from established policy or practice worked to her disadvantage." (citations omitted)); Diaz v. Eagle Produce, Ltd., 521 F.3d 1201, 1214 (9th Cir. 2008) (holding that reasonable jurors could conclude that deviating from company policy "undermines the credibility of the proffered explanations"). Nonetheless, in Diaz, the court found the Plaintiff failed to create a genuine issue of fact concerning pretext. 521 F.3d at 1214-15. So too, here.

Defendant's financial concerns at the time of Plaintiff's termination are undisputed. [Def.'s CSOF, at ¶ 13; Pltf.'s CSOF at Responsive ¶ 8-13.] In his declaration, Oshiro stated that he realized Defendant should consider reductions in force to maintain the fiscal health of the business. [Oshiro

Decl. at ¶ 4.[3]] Oshiro also stated neither Plaintiff's age nor ancestry was a factor in the decision to retain Quiocho. Rather, Quiocho was selected over Plaintiff because Quiocho had more relevant union experience and a significantly longer tenure with the company – approximately eighteen years more experience with the Company. [Id. at ¶¶ 6, 9-10.] The evidence that Defendant failed to follow the requirements of the position to have a college degree does not undermine the credibility of Defendant's explanation for selecting Quiocho over Plaintiff.

Even with this circumstantial evidence, no reasonable juror could find pretext "in light of the specific and uncontroverted evidence that nondiscriminatory considerations motivated" Defendant's choice of Quiocho over Plaintiff for the merged general manager position. See Diaz, 521 F.3d at 1215. Instead, "abundant and uncontroverted independent evidence" suggests that "no discrimination . . . occurred." Reeves, 530 U.S. at 148. Plaintiff has "created only a weak issue of fact as to whether the employer's reason was untrue," which is insufficient to survive summary judgment. See id. Plaintiff has not met his burden in raising a genuine issue of material fact

---

[3] Plaintiff objects to the admissibility of this statement of fact as calling for speculation. [Pltf.'s CSOF at Responsive ¶ 14-16.] However, Oshiro's testimony as to why he decided to merge the two positions does not call for speculation because he is testifying regarding his own thought processes.

for trial as the question of whether Defendant's reason for
terminating his employment was a pretext for unlawful
discrimination. Plaintiff's claims of discrimination under Title
VII and Haw. Rev. Stat. § 378-2 fail as a matter of law.
Accordingly, Defendant is entitled to summary judgment. See Fed.
R. Civ. P. 56(a) ("The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of
law.").

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for
Summary Judgment, filed October 4, 2023, is GRANTED. Summary
judgment is granted in favor of Defendant as to all of
Plaintiff's claims in this case. The Clerk's Office is DIRECTED
to enter judgment in favor of Defendant on **January 29, 2024,**
unless Plaintiff files a timely motion for reconsideration of
this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 12, 2024.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<u>GENE CALIWAG V. C&S WHOLESALE GROCERS, INC.</u>; CV 21-00367 LEK-RT;
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT